IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


ROBERT HANKINS,                        :
                                       :
            Plaintiff                  :
                                       :
      v.                               :    CIVIL NO. 3:CV-13-2565
                                       :
SECRETARY JOHN WETZEL,                 :    (Judge Conaboy)
ET AL.,                                :
                                       :
            Defendants                 :

_____

**MEMORANDUM**
**Background**

Robert Hankins, an inmate presently confined at the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp.), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983.  Service of the Complaint was previously ordered.

There are twenty-nine (29) Defendants named in the Complaint, including Secretary John Wetzel; Chief Hearing Examiner Robin Lewis; Vincent Mooney; Chief Grievance Officers Dorina Varner and Tracy Williams of the Pennsylvania Department of Corrections (DOC) as well as the following officials at Plaintiff's prior place of confinement the State Correctional Institution, Dallas, Pennsylvania (SCI-Dalllas): Superintendent Jerome Walsh; Captain Vincent Kopec; Deputy Superintendents Norm Demming and Lawrence Mahally; Hearing Examiners Kerns-Barr and C.J. McKeown; Lieutenants David Mosier and Daniel Zielen.

Plaintiff is also proceeding against the following officials of the Rockview State Correctional Institution, Bellefonte, Pennsylvania (SCI-Rockview): Superintendent Marirosa Lamas; Deputy

1

Superintendent Horton; Captain L. Eaton; former Deputy
Superintendent Robert Marsh; Lieutenant Hardy; Captain Kormatic;
Major Snedeker;[1] Superintendent's Assistants Jeffrey Rackovan and
Robin Lucas; and Captain Pall.[2]  Also named are numerous John/Jane
Doe defendants who are described as being employees of either the
DOC, SCI-Dallas, or SCI-Rockview.

Plaintiff generally alleges that due to a "systematic custom
& practice" of the DOC, he has been housed around prisoners who
have mental health problems "on many occasions over the years" in
the Restrictive Housing Units (RHU) at various state correctional
facilities.  Doc. 1, ¶¶ 2 & 4.[3]  Hankins vaguely claims that
because those mentally ill prisoners have not been provided with
proper treatment, they have assaulted him, contaminated their RHUs
with human waste, prevented him from sleeping through their
disruptive actions, and he has had to witness their self
destructive and bizarre behavior.  There are no specific incidents
referenced in the Complaint.  However, Plaintiff states that he is
seeking relief for conduct that stretches as far back as 1990 and
which purportedly transpired in the RHUs at seven (7) different
Pennsylvania state correctional facilities.  See id. ¶ 9 .

Hankins indicates that because of being exposed to the above
described conduct he as suffered sleep deprivation and headaches
and has not been properly evaluated by the DOC's psychology staff.

---

1.  Snedeker is listed twice.

2.  Pall and Kopec appear to be listed as being employed at both
SCI-Dallas and SCI-Rockview.

3.  The Statement of Claim section of the Complaint is set forth in
a confusing manner as it contains multiple ¶¶ numbered 23-28 and
there are no ¶¶ 30-44.

See id. at ¶ 8.  The Complaint additionally raises general contentions that Hankins has been subjected to unconstitutional conditions of confinement, food is used as punishment by correctional officers in that he was placed on a modified meal restriction, there was interference with his legal mail and delivery of publications, and he was denied due process with respect to multiple retaliatory misconduct charges.  However, with respect to many of those allegations, Plaintiff fails to state when or where those deprivations and acts occurred.  Hankins seeks nominal, compensatory, and punitive damages as well as injunctive relief.

## **Discussion**

Defendants claim entitlement to entry of dismissal on the grounds that: (1) many of Plaintiff's claims are barred by the statute of limitations; (2) the allegations of interference with legal mail fail to state a viable claim; (3) Plaintiff's contention of denial of publications does not rise the level of a constitutional violation; (4) Hankins has failed to allege personal involvement by many of the named Defendants; (5) the Complaint fails to set forth an actionable retaliation claim; (6) since Hankins enjoys no right to be housed in a particular housing unit, his conditions of confinement allegations must fail; (7) a viable claim of failure to protect Plaintiff's safety has not been raised; and (8) the Complaint has failed to set forth a cognizable denial of due process claim with respect to Hankins' misconduct proceedings.  See Doc. 24, pp. 10-11.

3

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

Twombly, at 555.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).  Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Statute of Limitations**

Defendants argue that Plaintiff include claims that occurred several years, if not decades ago, and that such claims are time barred.  See Doc. 24, p. 17.  This Court agrees.

In reviewing the applicability of the statute of limitations to a civil rights action, a federal court must apply the appropriate state statute of limitations which governs personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276 (1985); Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 457 n.9, 25 (3d Cir. 1996).  The United States Supreme Court clarified its decision in Wilson when it held that courts considering civil rights claims should borrow the general or residual [state] statute for personal injury actions.  Owens v. Okure, 488 U.S. 235, 250 (1989); Little v. Lycoming County, 912 F.Supp. 809, 814 (M.D. Pa. 1996).It has also been held that "state statutes of limitations should be borrowed for suits under Bivens."  Roman v. Townsend, 48 F. Supp.2d 100, 104 (D. Puerto Rico 1999).

Pennsylvania's applicable personal injury statute of limitations is two years.  See 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).

The question of when a cause of action accrues is a question of federal law.  Smith v. Wambaugh, 887 F. Supp. 752, 755 (M.D. Pa. 1995).  A civil rights claim accrues when the facts which support the claim reasonably should have become known to the plaintiff.  If a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing pattern falls within the limitations period.  Brenner v. Local 514, 927 F. 2d 1283, 1295 (3d Cir.  1991).  It is also well settled that a person may realize he has been injured but is not adequately apprised as to the cause of his injury.  See McGowan v. University of Scranton, 759 F.2d 287 (3d Cir. 1985).  In Oshiver v. Levin, Fishbein, Sedran, & Berman, 38 F.3d 1380 (3d Cir. 1993), the Third Circuit Court of Appeals recognized two doctrines, equitable tolling and the discovery rule, which may extend the statute of limitations.

The statute of limitations may be subject to equitable tolling where it is shown that the plaintiff exercised reasonable diligence in bringing his claims.  Campbell v. Kelly, 87 Fed. Appx. 234, 236 (3d Cir. 2003).  The discovery rule is a judicially created principle which tolls the statue of limitations in cases where a reasonable person in the plaintiff's shoes lacks the critical facts to put him on notice that he needs to investigate.

However, it has been recognized that the limitations period in a civil rights action will begin to run even if the Plaintiff does not know all the facts necessary for his claim, all that is required is that the plaintiff have sufficient notice to place him on alert of the need to begin investigating. <u>Gordon v. Lowell</u>, 95 F. Supp.2d 264, 272 (E.D. Pa. 2000). Under <u>Gordon</u> a "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." <u>Id</u>. This Court is satisfied that Plaintiff had the necessary information to pursue his pending claims on the dates on which they occurred.

Under the standards announced in <u>Houston v. Lack</u>, 487 U.S. 266 (1988), Plaintiff's Complaint will be deemed filed as of October 9, 2013, the date the Complaint is dated.[4] <u>See</u> Doc. 1, p. 13. Furthermore, it has not been asserted, nor is it apparent to this Court that the continuing pattern exception is applicable to those allegations. Accordingly, the motion to dismiss will be granted with respect to any claims which occurred prior to October 9, 2011.[5]

**Legal Mail**

The Defendants' second argument asserts that the Complaint has not stated a claim regarding the assertion that there was interference with Plaintiff's legal mail. <u>See</u> Doc. 24, p. 26.

In his Complaint, Hankins includes a vague claim that there was interference with his legal mail at SCI-Albion is 2012. He

---

4. The Court will assume that the Complaint was given to prison personnel for the purpose of it being mailed to this Court on said date.

5. It is noted that Plaintiff acknowledges that he was confined at SCI-Albion on May 11, 2012. <u>See</u> Doc. 1, ¶ 22.

similarly claims that he suffered mail interference while imprisoned at SCI-Mahanoy, SCI-Camp Hill, and SCI-Fayette.

However, no officials from those prisons are named as Defendants in this matter.  There is also no indication as to when those purported acts of interference transpired.  Moreover, SCI-Albion and SCI-Fayette are not located within the confines of the Middle District of Pennsylvania.  Accordingly, those claims as stated simply cannot proceed.

**Publications**

The Complaint alleges that Hankins' equal protection rights were violated in that he was treated differently from similarly situated "prisoners at Mahanoy, Camp Hill, Fayette and other DOC facilities" regarding his ability to receive and purchase publications.  Doc. 1, ¶ 45.  Once again it is noted that the Complaint does not set forth the dates of these alleged acts. Second, no officials from Mahanoy, Fayette, and Camp Hill are named as Defendants in this matter.  As noted above, SCI-Fayette is not even located withing the confines of this Court.

In addition to those deficiencies, a litigant seeking to establish a viable equal protection claim must show an intentional or purposeful discrimination. Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert. denied, 475 U.S. 1096 (1986).  However, the Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways."  Reed v. Reed, 404 U.S. 71, 75 (1971).  The Court of Appeals for the Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'"

8

Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)); see also Kuhar v. Greensburg-Salem Sch. Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

There are no facts alleged in the Complaint which could support a claim that any Defendants engaged in intentional or purposeful discrimination or that they treated Plaintiff differently from similarly situated individuals on the basis of his race, religious beliefs, or some other impermissible reason. There are simply no factual averments alleged which could support a claim that the Defendants engaged in actions which intentionally discriminated against the prisoner. Based on the standards announced in Wilson and Artway, a viable equal protection claim is not set forth in the Complaint.

**Personal Involvement**

The next argument for dismissal contends that the Complaint fails to allege any facts showing that many of the Defendants were personally involved in any constitutional misconduct. See Doc. 24, p. 13.

A plaintiff, in order to state an actionable § 1983 civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d

628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of <u>respondeat superior</u>. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d Cir. 1976).  As explained in <u>Rode</u>:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

<u>Rode</u>, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system.  See <u>Jones v. North Carolina Prisoners Labor Union</u>, 433 U.S. 119, 137-138 (1977); <u>Speight v. Sims</u>, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") Consequently, any attempt by Plaintiff to establish liability against the Warden solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim.  See also <u>Alexander v. Gennarini</u>, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability);

10

Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

A review of the Complaint indicates that Hankins is attempting to establish liability against a number of Defendants either on the basis of their respective supervisory capacities within the DOC, SCI-Dallas, or SCI-Rockview or based upon their involvement in the handling of Plaintiff's administrative grievances and appeals.  Pursuant to the above discussion, either approach is insufficient for the purpose of establishing liability under § 1983.

**Retaliation**

According to the Complaint, Plaintiff has been retaliated against for filing numerous lawsuits against DOC officials.  See Doc. 1, ¶¶ 11, 15.  This purported retaliation included the issuance of meritless misconducts and being placed on a modified meal restriction at unknown times and places.  Defendants argue that the Complaint fails to set forth a viable claim of retaliation.  See Doc. 24, p. 22.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to

11

deter a person of ordinary firmness' from exercising his First Amendment rights."  (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).  Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  Thus, the relevant inquiry is not

12

whether the alleged retaliatory conduct was unconstitutional.  On the contrary, Plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

Due to the vagueness of the Complaint, there are simply no facts set forth by Hankins which could arguably support a claim under Rauser that any of the named Defendants intentionally subjected him to adverse action as a consequence for pursuing a constitutionally protected activity.  The Defendants' request for dismissal of factually unsupported, wholly conclusory assertions of retaliation will be granted.

## RHU Placement

Defendants next assert that Plaintiff does not enjoy a right to any particular custody or security classification.  See Doc. 24, p. 20.  They add that he also does not have a right to be housed in any particular prison or housing unit.  Accordingly, they conclude that any challenge by Hankins to his RHU designation must fail.

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it.  See Sandin v. Conner, 515 U.S. 472, 484 (1995).  A protected liberty interest may be created by either the Due Process Clause itself or by state law.  Id.  Due process requirements apply only when the prison officials' actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of

13

prison life." Id. at 484.  Conversely, there can be no due process violation where there is no protected liberty interest.

It is well-settled that a prisoner has no justifiable expectation that he will be incarcerated in a particular prison. Olim v. Wakinekona, 461 U.S. 238 (1983).  In Montanye v. Haymes, 427 U.S. 236, 242 (1976), the Supreme Court held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Id. at 242.

On the same day, the Supreme Court decided the seminal case of Meachum v. Fano, 427 U.S. 215, 216 (1976), holding that no liberty interest under the Due Process Clause of the Fourteenth Amendment is infringed upon when an inmate is transferred, with or without a hearing, to another state correctional institution with substantially less favorable conditions.  The Court added that the state does not provide a liberty interest in being housed at a particular institution.  Meachum, 427 U.S. at 228.

Pennsylvania law leaves the housing of inmates in particular institutions to the discretion of state officials.  See 37 Pa. Code § 93.11(a); Hannon v. Terra, 1995 WL 129219 at *11 (E.D. Pa. 1995). An inmate can only state a claim if a transfer was made for some constitutionally impermissible reason such as retaliation against the prisoner's exercise of constitutionally protected rights.  See Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989).  No such assertion is raised in the present action.  Accordingly, this Court

agrees that Plaintiff did not have a protected liberty interest in either being held or remaining at any particular prison.

Additionally, the United States Supreme Court has held that an inmate has "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); James v. Reno, 39 F. Supp. 2d 37, 40 ( D.D.C. 1999)(citation omitted) (a federal inmate "has no liberty interest in his security classification"). Therefore, any attempt by Hankins to challenge his security or custodial classification must also fail.

With respect to the Plaintiff's claim that he has been in the RHU for thirteen (13) straight years (Doc. 1, ¶ 18), in Sandin, the Supreme Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence.  Sandin, 515 U.S. at 485. Courts within this circuit, applying Sandin in various actions, have found no merit in due process claims presented regarding short term institutional disciplinary custody placement.  See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest).

Similarly, in  Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997), the Court of Appeals for the Third Circuit addressed an action initiated by a Pennsylvania state inmate who had been held in administrative custody for a prolonged period.  The Court

applied _Sandin_ and concluded that placement without any type of due process hearing for a period of fifteen (15) months was not an atypical and significant hardship.  However, in the present case the magnitude of Plaintiff's alleged thirteen (13) straight years of RHU confinement arguably satisfies the atypical and significant hardship criteria of _Sandin_ and _Griffin_.

However, Plaintiff has not supported this claim with any factual specificity whatsoever.  Hankins' bald contention that he has been denied due process as evidenced by his thirteen years in the RHU does not satisfy the pleading requirements of _Iqbal_. Accordingly, this Court agrees that said claim, as stated. cannot proceed.  However, although the request for dismissal will be granted, the _pro se_ Plaintiff will be afforded the opportunity to plead a sufficient claim relating to his purportedly excessive RHU detention via submission of an amended complaint.

Plaintiff will be granted opportunity to submit a proposed amended complaint within fourteen (14) days of the date of this Memorandum and Order. The Amended Complaint should address the concerns outlined herein, be limited to the allegations and Defendants identified in the Original Complaint, and contain at least a modicum of factual specificity, identifying the particular conduct of the Defendant that is alleged to have harmed the Plaintiff, so that a defendant has adequate notice to frame an answer.

In the event that a proper amended complaint which sufficiently addresses the deficiencies addressed herein is submitted this matter will be reopened.

**Misconduct Proceedings**

With respect to the claims by Plaintiff that his due process rights were violated during various institutional misconduct proceedings, Defendants argue that said claims cannot proceed because Hankins does not have a liberty interest in remaining free of disciplinary custody and the prisoner was not subjected to an atypical or significant hardship.  See Doc. 24, p. 26.

In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed.  Wolff, 418 U.S. at 563-71.  The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id.

An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985).  In Hill, the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.  The Third Circuit Court of Appeals, and other courts applied the Wolff principles to prison disciplinary hearings which did not result in withdrawal of good time credit but

17

instead in disciplinary or administrative segregation.  E.g.,
Grillo v. Coughlin, 31 F.3d 53 (2d Cir. 1994); Griffin v. Spratt,
969 F.2d 16 (3d Cir. 1992); Cook v. Lehman, 863 F. Supp. 207 (E.D.
Pa. 1994).

However, the United States Supreme Court's subsequent
decision in Sandin v. Conner, 515 U.S. 472 (1995), marked a shift
in the focus of liberty interest analysis from one "based on the
language of a particular regulation" to "the nature of the
deprivation" experienced by the prisoner.  Id. at 481.  In Sandin,
the Supreme Court reasoned, inter alia, that "[d]iscipline by
prison officials in response to a wide range of misconduct" is
expected as part of an inmate's sentence.  Id. at 485.  The nature
of an inmate's confinement in disciplinary segregation was found
similar to that of inmates in administrative segregation and
protective custody at his prison. Id. at 486.

Focusing on the nature of the punishment instead of on the
words of any regulation, the Supreme Court held that the procedural
protections in Wolff were inapplicable because the "discipline in
segregated confinement did not present the type of atypical,
significant deprivation in which a state might conceivably create a
liberty interest." Id.  The Sandin Court relied on three factors
in making this determination: (1)confinement in disciplinary
segregation mirrored conditions of administrative segregation and
other forms of discretionary confinement; (2) based on a comparison
between inmates inside and outside segregation, the state's action
in placing the inmate there did not work a major disruption in the
inmate's environment; and (3) the state's action did not inevitably
affect the duration of inmate's sentence.

Courts within this circuit, applying _Sandin_ in various actions, have found no merit in procedural due process claims presented regarding institutional disciplinary hearings which result in disciplinary custody placement.  See _Torres v. Fauver_, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); _Smith v. Mensinger_, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest); _Vorhauer v. Conrad_, No. 3:CV-90-2196 (M.D. Pa. Jan. 29, 1997) (Vanaskie, J.) (inmate's confinement in disciplinary custody for ninety days in accordance with Department of Corrections procedures did not give rise to a protected liberty interest).

Based upon an application of the rules of law set forth in _Sandin_ and the subsequent line of decisions cited above to the sparsely detailed complaint, this Court finds that the non-specific false misconduct charge fails because Plaintiff does not allege that the terms of disciplinary confinement were of such magnitude as to implicate a protected liberty interest under _Sandin_.

As previously discussed, Plaintiff can reassert any such claims against any of the named Defendants which transpired after October 9, 2011 in an Amended Complaint, if he so chooses.

**Conditions of Confinement**

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety.  See _Farmer_

19

v. Brennan, 511 U.S. 825, 832 (1994).  Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

Plaintiff generally alleges that he was held in a small cell, constantly illuminated with poor ventilation. See Doc. 1, ¶ 10.  Plaintiff also indicates that was provided with an insufficient diet.  However, he does not state when, where, or how long those purported unconstitutional conditions lasted.  Hankins also fails to identify which, if any, of the Defendants were directly involved in those alleged constitutional deprivations.

Due to those deficiencies, the pleading requirements of Iqbal have once again not been met by the Complaint.  However, as discussed above. Plaintiff will be granted opportunity to file a proper amended complaint which sets forth sufficient facts to support those wholly conclusory claims.

**Failure to Protect**

The final argument raised by defendants is that the claim that they failed to protect Plaintiff's safety is inadequate because there are no facts alleged showing that a reasonable person could have inferred and disregarded the existence of an excessive risk to the inmate's health or safety.  See Doc. 24, p. 22.

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety.  See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This

requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

Furthermore, under the standards set forth in <u>Iqbal</u> and <u>Twombly</u>, in order to survive a motion to dismiss, factual allegations cannot be speculative or conclusory.  In addition, <u>Rode</u> requires that a complaint assert that a defendant had personal involvement in the constitutional misconduct. There are no facts presented which could support Plaintiff's speculative contention that being housed in the same unit as mentally ill prisoners posed a risk of serious harm.  Likewise, his bald assertions of suffering sleep deprivation and headaches are not sufficiently developed.

Once again, although the failure to protect claims as presently stated are subject to dismissal, Plaintiff will be granted opportunity to cure those deficiencies through the submission of an amended complaint.  An appropriate Order will enter.


S/Richard P. Conaboy _____
RICHARD P. CONABOY
United States District Judge


DATED: SEPTEMBER 30, 2014

21